**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

WOMEN IN MILITARY SERVICE FOR
AMERICA MEMORIAL FOUNDATION,
<u>Plaintiff,</u>

v.

HARTFORD FIRE INSURANCE COMPANY,
<u>Defendant-Appellee,</u>

and

THE CLARK CONSTRUCTION GROUP,
INCORPORATED,
<u>Defendant,</u>

No. 99-1670

v.

MONTGOMERY MUTUAL INSURANCE
COMPANY,
<u>Third Party Defendant-Appellant,</u>

and

KALOS CONSTRUCTION COMPANY,
INCORPORATED; WEISS/MANFREDI
ARCHITECTS; PROFESSIONAL
RESTORATION, INCORPORATED,
<u>Third Party Defendants.</u>

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Claude M. Hilton, Chief District Judge.
(CA-98-916-A)

Argued: April 4, 2000

Decided: May 23, 2000

Before HAMILTON, Senior Judge, John C. GODBOLD,
Senior Circuit Judge of the United States Court of Appeals
for the Eleventh Circuit, sitting by designation,
and David A. FABER, United States District Judge for the
Southern District of West Virginia, sitting by designation.

_____

Vacated and remanded by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Stephen Anthony Horvath, TRICHILO, BANCROFT,
MCGAVIN, HORVATH & JUDKINS, Fairfax, Virginia, for Appel-
lant. Brian Louis Moffet, NILES, BARTON & WILMER, Baltimore,
Maryland, for Appellee. **ON BRIEF:** Michael J. Carita, TRICHILO,
BANCROFT, MCGAVIN, HORVATH & JUDKINS, Fairfax, Vir-
ginia, for Appellant. Craig David Roswell, NILES, BARTON &
WILMER, Baltimore, Maryland, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

This is a dispute between two insurance companies over coverage.
The Women in the Military Service for America Memorial Founda-
tion, Inc. (WIMSA) undertook to construct a memorial on land of
Arlington National Cemetery, to honor the involvement of women in
military service. The National Parks Service issued to WIMSA a per-
mit to construct the memorial. The permit required WIMSA to be
responsible for management, performance, use and safety within the
park area involved until the work is completed, inspected and

2

accepted and thereafter as long as the facility is in place. WIMSA was responsible to pay the United States for all damages to lands or other property of the United States caused by the permittee or by the permittee's employees, contractors, or employees of the contractors, and for costs and repairs for any structures, facilities, sod, soils or landscape vegetation on park land damaged by the work.

WIMSA contracted with Clark Construction Group, Inc. to do the work. Hartford issued to Clark a Builder's Risk Policy and Commercial General Liability Policy. WIMSA was named as an additional insured.

Clark subcontracted excavation work to Kalos Construction Co., Inc. Kalos was insured by Montgomery Mutual Insurance Company under a commercial general liability policy.

The project consisted of a semi-circular building around an open circular plaza with a large fountain. Preexisting pylons completed the plaza circle. The pylons are approximately 60 feet in height and are made of stone-clad concrete. They supported some lighting already in place and were to support new lighting for the memorial. WIMSA barricaded the area of the work, including the area on which the pylons were located.

During construction Kalos excavated a trench near one of the pylons. The weight of the pylon either collapsed or compromised the trench and the pylon collapsed, damaging it to the extent of more than $1,000,000.

WIMSA called on Clark and Hartford to cover the damages. Hartford denied coverage. WIMSA sued. Montgomery Mutual was brought in as a third party. It settled and was assigned WIMSA's rights against Hartford. Numerous crossclaims were filed between the various parties and were settled. Remaining before the court were the claims of Montgomery Mutual, as assignee, against Hartford. Count II sought a declaratory judgment against Hartford, Count V alleged breach of contract of the Builder's Risk Policy, and Count VI alleged bad faith against Hartford.

The coverage provisions of the Builder's Risk Policy provided:

A. COVERAGE.

1. We will pay for ALL RISKS OF DIRECT PHYSICAL "LOSS" to covered property (including the cost of labor expended therewith, for which a premium charge is made) caused by any of the covered causes of loss. (Including general average & salvage charges for which insured is legally liable.) Covered property is defined as:

a. Structures (including foundations, additions, attachments, permanent fixtures, and materials and supplies) fixtures, equipment, machinery and similar property which will become a permanent part of the structure described in the declarations or schedule, while under construction, reconstruction/erection, fabrication or repair at the premises described in the declarations of schedule;

. . .

d. Property of others, used or to be used in, or incidental to the construction operations, for which you may be responsible or shall, prior to any "loss" for which you make a claim, have assumed responsibility."

II PROPERTY NOT COVERED.

Covered property does not include:

a. Machinery, tools, equipment or other property which will not become a permanent part of the structure(s) described in the declarations or schedule unless the replacement cost of such property is included in the contract price and reported to us . . . .

By letter Hartford denied coverage. We set out that letter in full:

4

Dear Mr. Johnson [Claim manager of Clark] and Ms. Van Voast [Project manager]:

This letter is a response to a claim from Lehr McGovern Bovis Inc., and their representative, Goodman Gable Gould, for costs associated with re-erection, and repairs to a pylon which fell over at Arlington National Cemetary on July 3, 1996.

The policy's Builder's Risk Project Certificate describes the project as "Construction of cast-in-place museum and memorial. One floor above grade and one floor below grade. Approximately 30,000 squ.ft. structure." There is no reference to insuring pylons.

The Builders Risk Coverage Form, page 1. A. Coverage states, "We will pay for ALL RISKS OF DIRECT PHYSICAL "LOSS" TO Covered Property (including the cost of labor expended therewith, for which a premium charge is made) caused by any of the Covered Causes of Loss. (Including General Average and Salvage charges for which the insured is legally liable.) Covered Property is defined as:

a. Structures (including foundations, additions, attachments, permanent fixtures, and materials and supplies) fixtures, equipment machinery, and similar property which will become a permanent part of the structure described in the Declarations or schedule while under construction, reconstruction/erection fabrication, or repair at the premise described in the Declarations or schedule.

Since we did not insure the pylon itself, it is not covered under the policy. The site plans include costs for repairing, cleaning, and pointing up the pylons. These costs are included in the work we insure. Had the pylon undergone this work, prior to this loss, we would have covered the cost of repairing the work performed, but not the erection or any damages sustained to the pylon. Since work to the pylon had

5

not commenced at the time the pylon fell, our coverage will not apply.

Since the pylon itself was not covered under the policy, and since none of the scheduled work was performed on the pylon at the time of the loss, we must respectfully deny this claim.

By denying this claim, we are not waiving any other rights, or defenses afforded us under the terms of our policy with The Clark Construction Group.

Very Truly Yours,

/s/ Thomas E. Curtin, Jr.

Thomas E. Curtin, Jr.
Claim Consultant
0335g/2-3
sym

Hartford moved to dismiss under Rule 12(b)(6), and the court granted the motion on the basis that the exclusion provision of II controlled because, it found, there was no indication that the pylon property was to become a permanent part of the memorial or that Clark or plaintiff ever disclosed to Hartford the replacement cost of the pylons to include such cost in the contract. And, the court concluded, for property to be covered it must not only satisfy the definition of Coverage but also not be specifically excluded. It recognized that there might be ambiguities in the policy but declined to address them because it found that the plain and unambiguous language of the exclusion clause made it unnecessary.

The court erred. This case could not be decided on 12(b)(6) grounds. It is unclear whether the pylons were to be a permanent part of the memorial. They supported the lighting, existent and new, that would be used to illuminate the memorial. Hartford acknowledges that it was obligated to repair, clean, and point up the pylons. It is not clear that the court had before it all of the site plans, including the

6

work on the pylon that was damaged, or that it had before it the project's declarations and schedules.

Hartford's letter denying coverage is internally inconsistent and, by itself, casts doubt on Hartford's position. It asserts without explanation that the pylons are not covered at all. But then it goes on to acknowledge that Clark is obligated to repair, point up and paint the pylons. That obligation appears in subsection I(a), which defines structures that will become a permanent part of the structure described in the Declarations or schedule. Thus with respect to repairs, Hartford did not assert that the pylons to be repaired are not "a permanent part of the structure," but rather relies upon the assertion that repairs had not been commenced.

In addition to these inconsistencies it is at least arguable that under subsection I(d) the pylons are property of others incidental to the construction operations, for which Hartford may be responsible.

Additionally, it appears to us uncertain whether the phrase "while under construction, reconstruction, erection, fabrication or repair" in subsection I(a) refers to repair (etc.) of the particular item or repair (etc.) of any item of the project.

There are also ambiguities in the policy as the court recognized. The court as fact finder must resolve them.

The decision of the district court is vacated and the case is remanded for consideration on a fully developed record.

<u>VACATED AND REMANDED</u>